## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION
## IN ADMIRALTY

NORTH FLORIDA SHIPYARDS,
INC.

      Plaintiff,

v.                                             Case No: 3:17-cv-1273-J-34MCR

M/V ATLANTIS II, her engines,
tackle, apparel, etc., in rem,

      Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's Motion for Default Judgment (Doc. 19) and Plaintiff's Motion for Interlocutory Judicial Sale of Vessel, or, In the Alternative, Motion for Judicial Sale of Vessel ("Motion for Sale") (Doc. 27). The owner of the Defendant Vessel has not appeared in this matter and has not responded to the Motion for Default Judgment. The motions are therefore deemed to be unopposed by the Defendant Vessel. In addition, although Intervening Plaintiff David Allen has not filed his own motion for default judgment,

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02..

Mr. Allen agrees that default judgment should be awarded in favor of Plaintiff. (Doc. 24 at 2.) Both Plaintiff and Mr. Allen agree that a default judgment rendered in favor of Plaintiff would not preclude Mr. Allen from claiming any amount of the *res* after a sale of the vessel. (*Id.*)

Plaintiff initiated this action on November 14, 2017 by filing a Verified Complaint in Rem against the Defendant Vessel alleging that the Vessel's owner failed to compensate Plaintiff for certain marine and berthing services which were necessary to maintain the Defendant Vessel in proper condition for navigation. (Doc. 1.) According to the Verified Complaint, the Defendant Vessel, through its agents, contracted for such services at Plaintiff's facility and entered into a Service Agreement. (Doc. 1-2.) Article I of the Service Agreement authorizes Plaintiff to perform services described in one or more service orders. (*Id.* at 1.) Article II of the Service Agreement provides, in relevant part, an interest rate of one and one-half percent per month for any invoice not paid within thirty (30) days after the invoice date. (*Id.*) Article III of the Service Agreement provides a berthing fee for dockage at a rate of $20.00 per foot, per day plus utilities and sales tax. (*Id.*) The Service Agreement also provides a maritime lien and security interest in the Defendant Vessel for any unpaid sums due to Plaintiff for services performed by Plaintiff or for use of Plaintiff's facilities. (*Id.* at 4.) The agreement further entitles Plaintiff to attorney's fees and expenses in the event that Plaintiff employs counsel to collect any service amounts due under the

agreement. (*Id.*) The agreement is dated September 8, 2011, and remains in effect until terminated upon written notice. (*Id.* at 3.)

Plaintiff rendered invoices to the Owner of the Defendant Vessel for services performed from September 2017 through November 2017. (Doc. 1-1.) Plaintiff has not been paid on the invoices to date. (Doc. 1 at 2.) The total amount due and owing to Plaintiff at the time the Complaint was filed is $122,929.05. (*Id.*) Plaintiff claims a maritime lien against the Defendant Vessel for the unpaid services performed and also seeks attorney's fees and costs. (*Id.*)

On January 31, 2018, upon the Court granting Plaintiff leave to file, Mr. Allen filed a Verified Seaman's Intervening Complaint. (Doc. 22.) Mr. Allen claims an interest in the *res* for seaman's wages owed to him in the amount of $243,750.00. (*Id.* at 2.) The Court entered an Order directing the issuance of a warrant of arrest for the Defendant Vessel. (Doc. 6). The Court also appointed Plaintiff as Substitute Custodian for the Defendant Vessel. (Doc. 5.) The warrant was served on the Vessel by the U.S. Marshal on November 22, 2017. (Doc. 11.)

Plaintiff filed a notice on December 7, 2017 indicating that it had mailed to the known owner of the Defendant Vessel, via certified mail, a copy of the Complaint, Order directing the issuance of a warrant of arrest, and the returns of service from the U.S. Marshal. (Docs. 12, 14-1.) Plaintiff also filed proof of publication showing it had published in the *Florida Times-Union* a "Notice of Action In Rem and Arrest of Vessel." (Doc. 13.)

No person or entity has filed a claim as to the Defendant Vessel or otherwise appeared in this action (other than Intervening Plaintiff), despite being given adequate time to do so.  *See* Local Admiralty Rule 7.03(f).  Accordingly, on January 24, 2018, upon motion of Plaintiff, the Clerk entered default against the Defendant Vessel.  (Doc. 15.)

The Court now has before it Plaintiff's Motion.  Plaintiff seeks entry of default judgment in favor of Plaintiff and against the Defendant Vessel in the amount of $321,155.79, representing $132,736.92 for dockage and services provided to the Vessel through November 22, 2017; $3,398.39 for interest; $165,908.26 in substitute custodian expenses through January 31, 2018; $2,500.00 for U.S. Marshal fee; $15,560.00 in attorney's fees; and $1,056.22 for costs.  (Doc. 19 at 2.)  In support of the Motion, Plaintiff filed the affidavit of Eugene Alley, the individual in charge of Special Projects for Plaintiff.  (Doc. 19-2.)  Mr. Alley confirms in the affidavit that Plaintiff has due and owing $132,736.92 for dockage and services provided to the Vessel through November 22, 2017 and interest in the amount of $3,398.39 through that date.  Mr. Alley also confirms that Plaintiff has incurred $165,908.26 in substitute custodian expenses from November 22, 2017 through January 31, 2018, as well as a $2,500.00 fee paid to the U.S. Marshal incident to the arrest of the Vessel.[2]  Plaintiff also filed the affidavit of its attorney, C. Ryan Eslinger, Esq., as well as a

---

[2] Mr. Alley confirms that the Vessel continues to accrue substitute custodian charges in the amount of $2,005.00 per day.

- 4 -

declaration from a local maritime attorney, Howard T. Sutter, Esq. (Docs. 19-1 & 20-1, respectively.) Mr. Eslinger confirms in his affidavit that Plaintiff incurred $15,560.00 in attorney's fees, as well as $1,056.22 in costs.[3]

By virtue of the Defendant Vessel's default, the facts as alleged in the Verified Complaint against the Defendant Vessel are admitted as true. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (citing *Nishimatsu Construction Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The undersigned finds that Plaintiff has complied with the requirements of Rule 55 of the Federal Rules of Civil Procedure and Local Admiralty Rules 7.03(h) and 7.03(i). Additionally, Plaintiff has been incurring substitute custodian expenses since the Vessel was arrested and Plaintiff became the substitute custodian. Pursuant to 28 U.S.C. § 1921 and Local Admiralty Rule 7.05(l)(2), Plaintiff as substitute custodian is entitled to an award of its custodial expenses incurred in connection with the custody of the Vessel. *See* 28 U.S.C. § 1921(a)(1)(E); Local Admiralty Rule 7.05(l)(2); *see also Int'l Ship Repair & Marine Servs. v. Caribe Sun Shipping*, No. 8:12-cv-1651-T-33TGW, 2013 WL 24794, at *1 (M.D. Fla. Jan. 2, 2013).

---

[3] Mr. Eslinger avers Plaintiff has incurred the following costs: $400.00 for the Court filing fee; $25.00 vessel abstract fee; $612.28 for publication in the *Florida Times-Union*; $14.94 for certified mail charges; and $4.00 for parking during a meeting with the U.S. Marshal.

The undersigned also finds Plaintiff is indeed entitled to recover its reasonable attorney's fees and costs.[4] Plaintiff's claims in this action arose out of a contractual obligation based on services rendered pursuant to a Service Agreement between the parties. (Doc. 1-2.) The Service Agreement contains a provision for recovery of costs and attorney's fees in the event Plaintiff employed counsel to help collect on the outstanding invoices.[5] (*Id.* at 4.) Accordingly, the undersigned will proceed to consider the reasonableness of the attorney's fees and costs.

To determine the amount of attorney's fees to be awarded, the Court follows a three-step process. *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000); *see also Suncoast Schools Fed. Credit Union v. M/V Le Papillon*, No. 8:09-cv-765-T-17AEP, 2010 WL 882889, at *1 (M.D. Fla. Mar. 2, 2010) (applying *Dillard* in an admiralty case). "First, [the] [C]ourt asks if the plaintiff has 'prevailed' in the statutory sense . . . Second the [C]ourt calculates

---

[4] "Attorneys' fees generally are not recoverable in admiralty unless (1) they are provided by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorneys' fees." *Natco Ltd. P'ship v. Moran Towing of Fla.*, 267 F.3d 1190, 1193 (11th Cir. 2001) (citing *Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 730-31 n.5 (5th Cir. 1980)). In this case, the undersigned finds that attorney's fees are appropriate based on the contractual provision in the Service Agreement entered into by the parties.

[5] The Service Agreement provides that "[i]n the event [Plaintiff] employs counsel to collect any service charges or other amounts due under this agreement, to otherwise enforce the terms of this agreement or to foreclose a maritime lien, possessory lien or other statutory lien or security interest, OWNER agrees to pay to [Plaintiff] all costs of collection or enforcement, including attorney's fees and expenses and the cost of any legal action or other proceeding, whether or not suit is brought." (Doc. 1-2 at 4.)

the 'lodestar,' which is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area . . . Finally, the [C]ourt has the opportunity to adjust the lodestar to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." *Dillard*, 213 F.3d at 1353 (citations omitted). "The party who applies for the attorney's fees is responsible for submitting satisfactory evidence to establish both that the requested rate is in accordance with the prevailing market rate and that the hours are reasonable." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (citing *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)).

Here, a Clerk's default has been entered against the Defendant Vessel and the undersigned has found that all facts establishing liability have been admitted as true. As such, Plaintiff is a prevailing party. The undersigned must now determine the amount of fees using the "lodestar" approach.

The Court must next determine whether the hourly rate charged by Plaintiff's attorney in this matter was reasonable. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman*, 836 F.2d at 1299 (internal citations omitted). To meet its burden, Plaintiff submitted the declaration of Mr.

Sutter, a Board Certified Admiralty & Maritime lawyer since 2000. (Doc. 20-1.) In Mr. Sutter's opinion, Plaintiff's attorney's hourly rate of $400.00 per hour is a reasonable hourly rate in light of the monetary amount in controversy, the facts and characteristics of the cause, and the results expected to be achieved in the representation of the Plaintiff. (Doc. 20-1 at 2.) Mr. Sutter also stated that the $400.00 hourly rate "is within the range of fees customarily charged by maritime attorneys in Florida and in the Jacksonville area." (*Id.*) The undersigned agrees with Mr. Sutter and finds the hourly rate of $400.00 to be reasonable, especially in view of Mr. Eslinger's fifteen (15) years of experience, his board certification, his position as the immediate past Chair of the Florida Bar Admiralty Law Committee and the complicated nature of Rule C vessel arrests.

Plaintiff seeks reimbursement for attorney's fees in the total amount of $15,560.00. The undersigned has reviewed the time records and the declaration of Mr. Sutter, and finds the following hours spent on preparing the Complaint and arrest forms to be excessive considering that many of the arrest documents are standard forms:

- 11/7/2017: Telephone conference with client regarding information for vessel arrest (.2). Begin drafting verified complaint for arrest (1.0). Draft and revise civil cover sheet, consent and indemnification for substitute custodian, motion for appointment of substitute custodian and memorandum of law, motion for issues [sic] and order and warrant, Plaintiff's notice of filing statement of insurance, Plaintiff's notice of filing verification, order of substitute custodian, order granting warrant, process of attachment and garnishment, verification and warrant of arrest (2.3). Review documents for exhibits and [sic] A and B to Complaint (.2). Telephone conference with US Marshal's office regarding deposit amount and service time (.2). Draft, revise and

>   finalize correspondence to client regarding information for arrest procedure (.3).
>
> - 11/9/2017: Redact invoices for exhibits in accordance with Rule 5.2 (.4). Office conference with CFO Linda Forde regarding information for check for Marshal's service. Revise and finalize complaint and all supporting paperwork. (2.2). Telephone conference with United States Coast Guard regarding information for Atlantis II (.2) . . .
>
> - 11/14/2017: Telephone conference with client regarding information for filing vessel arrest and complaint (.2). Draft, revise and finalize complaint for arrest with corrected information on invoice date and amounts (.8). Telephone conference with Middle District Clerk regarding filing information (.3). Draft, revise and finalize correspondence to Middle District Clerk regarding vessel arrest (.2). Receive and review correspondence from client regarding updated verification (.2). Legal research, exclusion of crew from vessel (1.0). Draft and revise 2 copies USM285 (.7). Draft and revise civil cover sheet (.6). Telephone conference with Betsy Davis regarding proposed order on Motion for Substitute Custodian (.2). Draft, revise and finalize proposed order granting motion for substitute custodian (.3) . . .

(Doc. 26-1 at 1-2.) Because the Court finds that 11.5 hours spent mostly on preparing and drafting the Complaint and arrest documents is excessive, the undersigned recommends that 3.0 hours be subtracted from Mr. Eslinger's time. *See, e.g., M/V Papillon*, 2010 WL 882889, at *3 (finding 11.5 hours of billable time spent mostly on preparing the complaint and arrest documents to be excessive). Likewise, the undersigned finds the following entries to be excessive, as they consist of reviewing a one-line endorsed order, form returns completed by the attorney, and a one-page proof of publication:

> - 11/17/2017: Receive and review order finding subject matter jurisdiction (.2).
>
> - 11/29/2018: Receive and review returns of service from US Marshal to US Marshall [sic] and NFS (.3).

- 9 -

- 12/12/2017: Receive and review proof of publication (.3).

(*Id.* at 3, 4, & 5.)  Therefore, the undersigned recommends that an additional .5 be subtracted from Mr. Eslinger's time for these entries.  Accordingly, the undersigned recommends that a total of 3.5 hours be subtracted from Mr. Eslinger's time (3.5 hours x $400= $1,400 total) and that Plaintiff be awarded attorney's fees in the amount of $14,160.00 (total amount requested, $15,560, minus total amount to be subtracted, $1,400).

Plaintiff further asserts that it has incurred $1,056.22 in costs.  Federal Rule of Civil Procedure 54(d)(1) provides for costs, other than attorney's fees, to the prevailing party.  "The presumption is in favor of awarding costs." *Arcadian Fertilizer, L.P. v. MPW Indus. Servs.*, 249 F.3d 1293, 1296 (11th Cir. 2001) (citations omitted).  "[A]bsent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in 28 U.S.C. § 1920." *Id.* (citations omitted).

The undersigned has reviewed the itemized costs submitted and finds the costs to be reasonable.  Therefore, pursuant to the contractual provision in the Service Agreement[6] and 28 U.S.C. § 1920, the undersigned recommends that Plaintiff be awarded costs in the amount of $1,056.22.

---

[6] As noted above, the Service Agreement provides that Plaintiff is entitled to "all costs of collection or enforcement, including attorney's fees and expenses and the cost of any legal action or other proceeding, whether or not suit is brought." (Doc. 1-2 at 4.)

Finally, Plaintiff requests the Court to order interlocutory judicial sale of the Defendant Vessel or, alternatively, to enter default judgment and order sale of the Defendant Vessel. Upon consideration, the undersigned recommends that the Court order sale of the Defendant Vessel.

Accordingly, it is respectfully **RECOMMENDED**:

1. Plaintiff's Motion for Default Judgment (**Doc. 19**) be **GRANTED** to the extent that the Clerk be directed to enter default judgment for Plaintiff and against Defendant M/V ATLANTIS II, her engines, tackle, apparel, etc., in rem, in the total amount of $319,759.79, representing (a) $132,736.92 for dockage and services provided to the Vessel through November 22, 2017; (b) $3,398.39 for interest through November 22, 2017; (c) $165,908.26 in substitute custodian expenses through January 31, 2018; (d) $2,500.00 for U.S. Marshal fee; (e) $14,160.00 in attorney's fees; and (f) $1,056.22 for costs.

2. Plaintiff's Motion for Sale be **GRANTED** to the extent that the Court order sale of the Defendant Vessel in ruling on the Report and Recommendation.

**DONE AND ENTERED** in Jacksonville, Florida on May 21, 2018.

*[Signature]*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record